**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

RANDY HERBERT HOLLY,

     *Plaintiff*,

*v.*                        CASE NO. 12-CV-13212

COMMISSIONER OF             DISTRICT JUDGE MARIANNE O. BATTANI
SOCIAL SECURITY,          MAGISTRATE JUDGE CHARLES E. BINDER

     *Defendant*.

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

**I.**    **RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

**II.**    **REPORT**

    **A.**    **Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability, Disability Insurance

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Benefits ("DIB"), and Supplemental Security Income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 9, 12.)

Plaintiff Randy Holly was 53 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 7 at 27.) Plaintiff's employment history includes work as a "tray transporter" and a "patient sitter" in a hospital for 26 years, as a cleaner in a fast food restaurant for one year, and as an assistant manager in a thrift store for less than one year. (Tr. at 201.) Plaintiff filed the instant claims on February 3, 2010, alleging that he became unable to work on June 15, 2003. (Tr. at 136-47.) The claims were denied at the initial administrative stages. (Tr. at 58-59.) In denying Plaintiff's claims, the Commissioner considered "Other Urinary Tract Disord[er]" and "Obesity and Other Hyperalimentation" as possible bases for disability. (*Id.*) On March 7, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") Mark B. Greenberg, who considered the application for benefits *de novo*. (Tr. at 8-57.) In a decision dated March 28, 2011, the ALJ found that Plaintiff was not disabled. (Tr. at 19.) Plaintiff requested a review of this decision on April 5, 2011. (Tr. at 4-7.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on May 22, 2012, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-3.) On July 20, 2012, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

## B.      Standard of Review

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is

multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making

3

a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence

4

without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

## C.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the SSI program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe

5

impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

D.     **ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through March 31, 2009, and that Plaintiff had not engaged in substantial gainful activity since February 23, 2008, the alleged amended onset date. (Tr. at 13.) At step two, the ALJ found that Plaintiff's degenerative joint disease, degenerative disc disease, hypertension, obstructive sleep apnea, gastroesophageal reflux

disease ("GERD"), kidney stones, migraine headaches, vertigo, and obesity were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 14-15.) At step four, the ALJ found that Plaintiff could perform his past relevant work as a patient sitter. (Tr. at 18-19.) Alternatively, at step five, the ALJ found that Plaintiff could perform a limited range of sedentary work. (Tr. at 15-18.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 19.)

### E.    Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff was treated for acid reflux and GERD by Robert McNier, M.D., from 2003 to 2008. (Tr. at 234-41.)

Plaintiff was also treated for kidney stones by Tri-City Urology Associates from 2002 through 2008. (Tr. at 435-58.) There are corresponding records of lab work and other records from the hospital regarding urological problems. (Tr. at 242-434.)

Plaintiff was treated by James LaFleur, M.D., from 2008 to 2010. (Tr. at 459-71, 486-92.) A chest x-ray taken on January 27, 2009, due to shortness of breath was "negative for active process." (Tr. at 468.)

At the request of Disability Determination Services ("DDS"), Plaintiff was examined on March 13, 2010, by Michael Brady, Ph.D. (Tr. at 472-75.) Dr. Brady concluded that Plaintiff did "not meet the diagnostic criteria for psychiatric diagnosis." (Tr. at 474.)

Plaintiff was also examined at the request of DDS by Siva Sankaran, M.D., on April 14, 2010. (Tr. at 478-80.) Dr. Sankaran noted that Plaintiff's last kidney stone attack was six years ago and that Plaintiff "is totally asymptomatic as far as the kidney stones are concerned now." (Tr. at

480.) Dr. Sankaran stated that although Plaintiff "has a history of lumbar degenerative disc disease with pain going down to the right leg[,]" "[c]linical examination shows minimal limitation of the lumbar spine." (*Id.*) Dr. Sankaran also noted that Plaintiff's straight-leg raising test was "negative bilaterally." (*Id.*) In addition, Dr. Sankaran noted that Plaintiff is "morbidly obese." (Tr. at 480.)

On March 4, 2011, Dr. LeFleur completed a Medical Source Statement (Physical) wherein he opined that Plaintiff could occasionally and frequently lift ten pounds, stand or walk for less than two hours in an eight-hour day, sit for less than six hours in an eight-hour day, was unlimited in his ability to push or pull, and that his limitations would "frequently" disrupt a regular job schedule. (Tr. at 487, 491.) Dr. LaFleur also completed a Medical Source Statement (Mental) wherein he indicated that Plaintiff was extremely limited in his ability to withstand the stress and pressure associated with an eight-hour work day, was markedly limited in his ability to understand, remember and carry out an extensive variety of technical or complex job instructions, to maintain concentration and attention for at least two-hour increments, and to handle funds, but was otherwise only mildly limited in the remaining areas. (Tr. at 488, 490.)

At the administrative hearing, Plaintiff testified that he has migraine headaches "[q]uite a bit of the time," that prescription medications "[s]ometimes" controls them, that he can feel one coming on, and that he can prevent it by taking medication if he can "catch it in time." (Tr. at 30.) Plaintiff stated that medication controls his vertigo. (Tr. at 30-31.) Plaintiff testified that he uses the CPAP machine for his sleep apnea and that he sleeps through the night, but also takes one nap for a couple of hours each day. (Tr. at 31.) Plaintiff stated that on a typical day he makes himself breakfast, lets the dog out, and goes to the store for about an hour. (Tr. at 32, 37.) Plaintiff also runs other errands, goes to doctor's appointments, cooks, cleans as long as it is not heavy work, does laundry, watches television, "putz[es]" around the garage, goes out for bingo once or twice

a week, and attends church. (Tr. at 33-34, 39.) Plaintiff testified that he can be on his feet for only ten or fifteen minutes before he needs to sit down. (Tr. at 35.) Considering his average day, Plaintiff responded that he is on his feet for "[m]ax three to four hours" between nine and five. (*Id.*) Plaintiff stated that he can sit for about one or one and one-half hours before he needs to get up. (Tr. at 36.)

Plaintiff also testified that he did not have to lift more than ten pounds while performing his work as a patient sitter because he "just walk[ed] along with" the patients but did not have to transport them. (Tr. at 43-44.)

At the administrative hearing, the ALJ asked the Vocational Expert ("VE") to consider an individual with Plaintiff's background who

> can perform light work with occasional postural activities, no ladders, ropes, or scaffolds. I would occasional [sic] right-leg controls and no concentrated exposure to lung irritants, humidity, extremes of temperature, or hazards.

(Tr. at 48-49.) The VE responded that such a person could perform Plaintiff's past relevant work as a patient sitter. (Tr. at 49.) The ALJ then asked the VE to add to the first hypothetical that the "individual can stand or walk for no more than three to four hours" and requires a "sit/stand option." (Tr. at 50.) The VE responded that such a person could perform the past work as a patient sitter. (*Id.*) The VE further testified that such a person could also perform the light unskilled jobs of parking booth cashier (1,500 jobs available in Michigan), production inspector (2,000 jobs available in Michigan), and office helper (4,500 jobs available in Michigan). (Tr. at 51.)

The ALJ then asked the VE to consider the following fourth hypothetical:

> sedentary work sitting for approximately 1.5 hours at one time. Standing or walking for 10 to 15 minutes at one time maximum. Standing or walking for a total of three to four hours with a sit/stand option with occasional postural activities, no ladders, ropes or scaffolds, occasional right leg controls, no concentrated exposure to lung irritants, humidity, extremes of temperature, or hazards, and ready access to a restroom.

9

(Tr. at 52.) The VE responded that such a person could perform the patient sitter job. (*Id.*)

### F.    Analysis and Conclusions

### 1.    Legal Standards

The ALJ determined that during the time Plaintiff qualified for benefits, he possessed the residual functional capacity to return to his past relevant work as a patient sitter. (Tr. at 18-19.)

The Commissioner's regulations state that the agency "will first compare our assessment of your residual functional capacity with the physical and mental demands of your past relevant work." 20 C.F.R. § 416.960(b); 20 C.F.R. §404.1560(b). "If you can still do this kind of work, we will find that you are not disabled." 20 C.F.R. § 404.1520(f); 20 C.F.R. § 404.1560(b)(3). "'By referring to the claimant's ability to perform a "kind" of work, [the regulations] concentrate[] on the claimant's capacity to perform a type of activity rather than his ability to return to a specific job or to find one exactly like it.'" *Boucher v. Apfel*, No. 99-1906, 2000 WL 1769520, at *7 (6th Cir. Nov. 15, 2000) (quoting *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995)).

An "ALJ [is] not required to solicit testimony from a VE in reaching his conclusion" that a plaintiff is able to perform her past relevant work. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010) (citing 20 C.F.R. § 404.1560(b)(2) ("We *may* use the service of vocational experts . . . to help us determine whether you can do your past relevant work[.]") (emphasis in original); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) ("The regulations permit an ALJ to use the services of a vocational expert at step four to determine whether a claimant can do his past relevant work . . . .")). Should the ALJ use the services of a VE, the ALJ need only incorporate those limitations into the hypothetical question that he finds credible and supported by the record. *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Alternatively, at step five, the ALJ found that Plaintiff could perform a limited range of sedentary work. (Tr. at 15-18.) Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a)(1991). Social Security Ruling 83-10 clarifies this definition:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

S.S.R. 83-10.

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.


### 2.      Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 9.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the "Commissioner erred as a matter of law by determining that Mr. Holly could return to his past relevant work as a patient sitter and by failing to properly evaluate Mr. Holly's credibility." (Doc. 9 at 6-11.)

### a.    Credibility Analysis

When a disability determination that would be fully favorable to a claimant cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789 at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999) (unpublished). However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky*, 35 F.3d at 1036.

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such

severity that it can reasonably be expected to produce such disabling pain. *See id.*; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *Id.* Although a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," C.F.R. §§ 404.1528(a), 416.929(a), "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded *solely* because they are not substantiated by objective medical evidence." SSR 96-7p, at *1 (emphasis added). Instead, the ALJ must consider the following factors:

(i)     [D]aily activities;

(ii)    The location, duration, frequency, and intensity of . . . pain;

(iii)   Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)     Treatment, other than medication, . . . received for relief of . . . pain;

(vi)    Any measures . . . used to relieve . . . pain.

*Felisky*, 35 F.3d at 1039-40; SSR 96-7p, at *3. Furthermore, the consistency of the evidence, including a claimant's subjective statements, is relevant in determining a claimant's credibility. 20 C.F.R. § 404.1527(c); SSR 96-7p, at *5.

In the instant case, the ALJ thoroughly considered each of the above factors. (Tr. at 15-18.) I suggest that the ALJ's finding – that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with the RFC analysis – is supported by substantial evidence. (Tr. at 18.) Although Plaintiff was treated for acid reflux and GERD from 2003 to 2008 (Tr. at 234-41), these conditions were under control with medication. In addition, although Plaintiff was also treated for kidney stones from 2002 through 2008 (Tr. at 435-58), this condition had not occurred recently and the ALJ nonetheless took the need to be near a restroom into account in fashioning the RFC analysis. (Tr. at 15, 52.) Dr. Sankaran noted that Plaintiff's last kidney stone attack was six years ago and that Plaintiff "is totally asymptomatic as far as the kidney stones are concerned now." (Tr. at 480.)

Although there is a cited history of degenerative disc disease, there are no x-rays, MRIs or other evidence of record to support the existence, let alone the severity, of this impairment. Dr. Sankaran stated that although Plaintiff "has a history of lumbar degenerative disc disease with pain going down to the right leg[,]" "[c]linical examination shows minimal limitation of the lumbar spine." (*Id.*) Dr. Sankaran also noted that Plaintiff's straight-leg raising test was "negative bilaterally." (*Id.*) As to mental impairments, Dr. Brady concluded that Plaintiff did "not meet the diagnostic criteria for psychiatric diagnosis." (Tr. at 474.) Furthermore, Plaintiff never received any mental health treatment.

14

Plaintiff was treated with prescription medication only as to his impairments. Such modest treatment is inconsistent with a finding of disabling symptoms. *See Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007).

Finally, the finding that Plaintiff was credible only insofar as his claims were consistent with the RFC analysis is supported by Plaintiff's testimony as to his daily activities. The ALJ's RFC findings were that Plaintiff could perform "sedentary work sitting for approximately 1.5 hours at one time[,] [st]anding or walking for 10 to 15 minutes at one time maximum. Standing or walking for a total of three to four hours with a sit/stand option . . . ." (Tr. at 52.) Plaintiff testified that he can be on his feet for only 10 or 15 minutes before he needs to sit down and that he is on his feet for "[m]ax three to four hours" during an eight-hour day. (Tr. at 35.) Plaintiff also stated that he can sit for about one or one and one-half hours before he needs to get up. (Tr. at 36.) These statements were incorporated into the ALJ's findings. In addition, Plaintiff indicated that his symptoms were largely under control by taking medication and using the CPAP machine. (Tr. at 30- 31.)

To the extent that the ALJ's findings departed from Plaintiff's testimony, I suggest that the ALJ properly discounted Plaintiff's allegations in light of the lack of medical evidence and Plaintiff's own testimony regarding his daily activities that include cooking meals, taking care of the dog, going shopping for an hour, running other errands, going to doctor's appointments, cleaning, doing laundry, watching television, "putz[ing]" around the garage, going out for bingo once or twice a week, and attending church. (Tr. at 32-39.)

I therefore suggest that the ALJ's finding that Plaintiff was not fully credible is supported by substantial evidence and should not be disturbed.

### b.    Past Relevant Work and RFC Analysis

I suggest that the ALJ's RFC analysis is also supported by substantial evidence for the same reasons as listed under the credibility analysis. In addition, I note that the ALJ incorporated Plaintiff's testimony into the RFC analysis that his past relevant work as a patient sitter did not require him to lift more than ten pounds because he "just walk[ed] along with" the patients but did not have to transport them. (Tr. at 43-44.)

Plaintiff contends that the ALJ improperly discounted Dr. LafLeur's medical source statements under this argument. Counsel is correct that the opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3).

Here, the ALJ correctly noted that "Dr. LaFleur's opinions are conclusory, accommodative, counsel-elicited standard checklist forms, unsupported by the record." (Tr. at 18.) I suggest that the ALJ properly noted that the checklist, without any supporting medical evidence either on the list or elsewhere in the record, is not entitled to significant weight. "Moreover, when the physician is a specialist with respect to the medical condition at issue, . . . her opinion is given more weight than that of a non-specialist." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). Therefore, I suggest the ALJ properly discounted Dr. LaFleur's opinion as to mental health issues since he is not a psychiatrist or psychologist, and the record was completely devoid of any evidence of mental health impairments.

16

"[A] treating physician's assessment may be unreliable because of the bias he or she may bring to the disability evaluation," i.e., he or she "'may want to do a favor for a friend and client, and so the treating physician may too quickly find disability.'" *Id.* at 1073 (quoting *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001)). "Additionally, we have noted that the claimant's regular physician may not appreciate how her patient's case compares to other similar cases, and therefore that a consulting physician's opinion might have the advantages of both impartiality and expertise." *Dixon*, 270 F.3d at 1177. I thus suggest that the ALJ properly considered that the conclusions in the medical source statement may have been "accommodative" rather than objective.

Therefore, I suggest that the ALJ's conclusion that Plaintiff could perform his past relevant work as a patient sitter or a limited range of sedentary work is supported by substantial evidence.

### 3.    Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.   **REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d

590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.


s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗
CHARLES E. BINDER
Dated: May 16, 2013                          United States Magistrate Judge


**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: May 16, 2013                    By    s/Patricia T. Morris
Law Clerk to Magistrate Judge Binder